UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-CR-63 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| JOSIAH N. NTEKUME, | |
| Defendant(s). | |

Presently before the court is defendant Josiah Ntekume's ("defendant") motion to dismiss counts 2 and 4 of the indictment as time-barred. (ECF No. 49). The United States of America ("the government") filed a response (ECF No. 50), to which defendant replied (ECF No. 51).

**I.  Background**

The government alleges that defendant "fraudulently obtained[ed] and falsely possess[ed] social security numbers and other personal information" and used that information "to obtain money by filing false and fraudulent state and federal income tax returns claiming refunds." (ECF No. 1 at 1). At the time of his arrest, defendant had approximately 250 pre-paid debit cards and roughly 50 sheets of paper containing the personal identification information of 195 people. *Id.* at 2. The debit cards had been loaded with over $200,000 from federal tax refunds, much of which had been spent. *Id.*

In a nine-count indictment, defendant is charged with one count of fraud in connection with access devices in violation of 18 U.S.C. § 1029(a)(3), six counts of theft of public money in violation of 18 U.S.C. § 641, and one count of wire fraud in violation of 18 U.S.C. § 1343. *Id.* The indictment was returned on February 22, 2017. (ECF No. 1).

**James C. Mahan**
**U.S. District Judge**

Defendant moves to dismiss counts two and four, both of which are theft-of-public-money charges, as time-barred. (ECF No. 49). Because the indictment alleges that the federal tax refund money was deposited onto pre-paid debit cards on February 1, 2012, for count two, and February 17, 2012, for count four, defendant argues that the claims became time-barred on February 1 and February 17, 2017, respectively. *Id.*

**II. Legal Standard**

In order to protect defendants from unfairly facing criminal liability for conduct in the distant past, "a statute of limitations . . . limit[s] exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts . . ." *Toussie v. United States*, 397 U.S. 112, 114–15 (1970). Congress sets the limitation period by statute, which "should not be extended 'except as otherwise expressly provided by law.'" *Id.* at 115 (quoting 18 U.S.C. § 3282).

"Statutes of limitations normally begin to run when the crime is complete." *Pendergast v. United States*, 317 U.S. 412, 418 (1943). "A crime is complete when each element of the crime has occurred." *United States v. Smith*, 740 F.2d 734, 736 (9th Cir. 1984) (citing *United States v. Drebin*, 557 F.2d 1316, 1332 (9th Cir.1977)). Determining when a crime is completed depends on whether the offense is "continuing" or not. The Ninth Circuit has held that:

> [A] criminal offense is typically completed as soon as each element of the crime has occurred. For example, a larceny is completed as soon as there has been an actual taking of the property of another without consent, with the intent permanently to deprive the owner of its use. The offense does not "continue" over time. The crime is complete when the act is complete. A "continuing offense," in contrast, is an unlawful course of conduct that does perdure.... The classic example of a continuing offense is conspiracy.

*United States v. Morales*, 11 F.3d 915, 921 (9th Cir. 1993) (quoting *United States v. McGoff*, 831 F.2d 1071, 1078 (D.C.Cir.1987)). "Thus, the Court in *Toussie* distinguished between offenses that involve a 'continuing process' and those that occur as 'instantaneous events.'" *Id.* (citing *Toussie,* 397 U.S. at 122).

Finally, "criminal limitations statutes are 'to be liberally interpreted in favor of repose.'" *Toussie*, 397 U.S. at 115 (quoting *United States v. Habig*, 390 U.S. 222, 227 (1968) (quoting *United States v. Scharton*, 285 U.S. 518, 522 (1932))).

**Discussion**

The parties agree on two things. First, 18 U.S.C. § 641 charges must be brought within five years. *See* 18 U.S.C. § 3282. Second, the five-year limitation period begins to run from the time the offense is completed. *Toussie v. United States*, 397 U.S. 112, 115 (1970). The parties do not agree on when the offense conduct underlying counts two and four was completed. If counts two and four are continuing offenses, they are timely. If they are not continuing offenses, they are time-barred.

Counts two and four allege violations of 18 U.S.C. § 641, which "criminalizes two distinct acts. . . . In short, paragraph one covers stealing from the United States and paragraph two covers knowingly receiving stolen United States property." *United States v. Fairley*, 880 F.3d 198, 204 (5th Cir. 2018) (citing *Milanovich v. United States*, 365 U.S. 551, 554 (1961)).

Defendant is charged with violating paragraph two of § 641. (ECF No. 1). The Ninth Circuit has not expressly decided whether violations of § 641 paragraph two are continuing offenses. *See, e.g., United States v. Neusom*, 159 Fed. Appx. 796, 799 (9th Cir 2005) (explaining that there is no controlling Supreme Court or Ninth Circuit precedent and the other circuits are split on this issue)).

A court should not conclude that an offense is a continuing offense "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115. Statutory language explicitly compels a continuing-offense conclusion when it "clearly contemplates a prolonged course of conduct." *Id.* at 120. Therefore, the court must first consider the explicit language of the statute:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

> Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—
>
> Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.
>
> The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

18 U.S.C. § 641.

Here, defendant is accused of "conceal[ing] and retain[ing] money belonging to the United States Treasury in the form of federal tax refunds, with intent to convert the same to his use and gain, knowing the money to have been stolen, purloined, and converted." (ECF No. 1 at 4). However, the statute requires that defendant receive, conceal, or retain the federal tax refunds at issue "with the intent to convert it to his use or gain." 18 U.S.C. § 641. Thus, under the plain language of the statute, "concealing" or "retaining" the money is an ongoing offense with a purpose: conversion to the defendant's use and gain. *Id.* Therefore, the continuing offense of concealing or retaining necessarily ends with the conversion of public funds to the defendant's use or gain.

Conversion under § 641 paragraph one is not a continuing offense. *See, e.g.*, *United States v. Beard*, 713 F.Supp. 285, 291 (S.D. Ind. 1989); *United States v. Reynolds*, No. 1:16-CV-0081-LJO-SKO, 2018 WL 1071303 (E.D. Cal. Feb. 23, 2018); *United States v. Crary*, No. CR 13-35-M-DLC, 2013 WL 6054607 (D. Mont. Nov. 15, 2013); *United States v. Pease*, No. CR-07-757-PHX-DGC, 2008 WL 808683 (D. Ariz. Mar. 24, 2008). Thus, once the elements of conversion are met, the statute of limitations begins running. *United States v. Lopez*, 484 F.3d 1186, 1192 (9th Cir. 2007) ("A crime is complete when each element of the crime has occurred."). Indeed, the parties agree that the first paragraph consists of a series of discrete criminal acts—that is to say, the statute of limitations begins to run the moment the defendant

embezzles, steals, purloins, converts, sells, conveys, or disposes of anything of value belonging to the United States. 18 U.S.C. § 641; (*see also* ECF Nos. 49 at 6 (collecting cases); 50).

Defendant converted the tax refunds when—as the government alleges in the indictment—"[t]his money was deposited onto pre-paid debit cards registered to the individuals . . . on or about the '[d]ate of [d]eposit." (ECF No. 1 at 4). Because defendant converted the refund to his use, defendant no longer concealed or retained the federal tax refund in count two as of the date of deposit: February 1, 2012. Because defendant converted the refund to his use, defendant no longer concealed or retained the federal tax return in count four as of the date of deposit: February 17, 2012.

Thus, the limitations period began under paragraph one when the defendant converted his ill-gotten gains to his use on February 1 and February 17, 2012.

As a result, counts two and four are time-barred.

### III. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to dismiss counts 2 and 4 of the indictment as time-barred (ECF No. 49) be, and the same hereby is, GRANTED.

DATED October 2, 2019.

_____
UNITED STATES DISTRICT JUDGE